# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

RECEIVED

DEC 17 2008

FREDDIE MCCOY,

LEONARD GREEN, Clerk

Plaintiff-Appellant,

CASE NO. 08-1641

v.

**STATE OF MICHIGAN, et, al**

Defendants-Appellees

## MOTION FOR RECONSIDERATION

This court issued an order dated November 18, 2008, denying Appellant's motion to proceed forma and deemed the instant appeal as frivolous, stating that it lacks an arguable basis in law or fact according to the court's author. This court erred when making the decision to deny the Appellant's motion and prematurely calling the instant appeal frivolous.

This court based their decision on misleading facts, perjured testimonies, misinterpretation of the law and judicial bias. This court overlooked and ignored crucial state and federal laws and the Michigan Constitution of 1963 that applied to this lawsuit and the surrounding of Appellant's 2004 termination. There is no dispute with this court and the district court that the Appellant's 2004 termination was never mention any amended complaint from the 1999 state lawsuit and was not dispute in the final hearing on November 24, 2004. On page two of this order, this court states that the district court dismissed Appellant's complaint on the ground of res judicata because the district court reasoned that Appellant could have the issues

surrounding his 2004 termination in the 1999 lawsuit. This court made a serious error in that false statement. Judge Hood never made this illogical reasoning which has been made a lot in this order; *see Judge Hood's decision dated March 31, 2008(06-10837)*. Appellant dispute the misleading facts made by this court on pg.2 of the order, stating "*The instant lawsuit, filed in 2006, alleged that McCoy had been fired in September 2004 due to incidents occurring in July 2004 and August 2004- prior to the dismissal of the state court lawsuit. The 1999 and 2006 complaints essentially arose from the same pattern of discriminatory conduct, because Michigan courts permit amendment at any time prior to judgment, McCoy could have sought to amend the 1999 complaint to incorporate the 2004 incidents.*"

This court cited two to be their main and leading authorities behind this court order, **Michigan Compiled Laws, sec.600.2301 and *Shah v. Upjohn Co., No. 195832, 1997 WL 33344730, at \*3(Mich. Ct. App. July 1. 1997) (where the first proceeding is underway, a plaintiff asserting new facts should move to amend complaint in first proceeding)*.** Appellant's lawsuit was filed by Attorney Mark T. Light on his behalf and Mr. Light is the sole author behind Appellant's 1999 state lawsuit which was follows by the amended complaint from the Appellant's second Attorney Robert Van Cleef in June 2002. Both these attorney were disbarred during the course of the 1999 state lawsuit. Appellant has clear up the second error on this order. Third judicial error is alleged incidents that this court mention and they occurred in July 2004 and August 2004. There were **no incidents occurring in July 2004 and August 2004 surrounding my termination in September 2004.** This false statement is causing confusion to this instant appeal. My 2004 termination was from a false allegation in June 2004. If this court is redefining the word "incident" into "allegation", they need to let Webster's dictionary and the other dictionary companies along with the English professors and the rest of the world that the word "incident" has a new definition. The second definition on the word "incident", according to Webster is "an *occurrence of an action or situation that is a separate unit of experience."* The synonyms for incident are occurrence, event, happening and concomitant. On the hand, allegation is defined as "*An assertion, especially an accusation, based on unsupported facts.*"

This court should not take any issues out of context because it tainted the order of not being valid and the court is abusing their power. Then this court misinterpreted **Michigan Comp. Laws section 600.2301. (Ex 1)** This court stated on pg.2 *"Michigan courts permit amendment at any time prior to judgment."* This fact is true but this court failed to mention that this give Michigan courts to established the Amendments rules for all Michigan courts to abide by and follow. **Michigan Court Rule (MCR) 2.118** is derived from **MCL 600.2301.** That law gave no authority to me to amend my complaint. This court overlooked the **MCL 600.2325(Ex.2), Amendment only on order of court,** which supersedes **MCL 600.2301**; see case no. 06-10837,docket 45. During a February 2004 scheduling conference, Judge James P. Giddings made a court order that all amendments will be completed by April 15, 2004 by both parties. *Shah v. Upjohn Co* case doesn't apply to me and wrongly cited in this appeal but in *Birch v. Cuyahoga County Probate Court, 392 F 3rd 151 (6th cir 2004)* which Judge Gibbons states from **SHAH,** *noting that federal courts should be cautious when making determinations of state law* and Judge Gibbons went on to say: *Federal court should manifest great caution blazing new state law-trails.* This court failed to take heed to their words and allow contradiction to be the rule of thumb when this order was made on November 18, 2008. The district court erred when it reverse their order dated April 10, 2007 to the Defendants' motion for reconsideration dated March 31, 2008. The ground of the dismissal of my lawsuit is based on one thing: Michigan's res judicata doctrine. Both the district court and the appeal court are making a serious constitutional error when applying this doctrine to my 2006 lawsuit. This doctrine does not apply to my case and was inappropriate to use this as a defense. Judge Hood was very correct in April, 2007 when she states *"**Application of res judicata is inappropriate because Plaintiff's claim in this action, and could not be resolved in Plaintiff's previous actions, and the actions do not involved the same parties or their privies.**"* This court and the district court is ignoring that I am or was union state classified public employee and is overlooking that the State court in 1999 to 2004 had no jurisdiction on the conditions of my employment which mean that the Appellant could not bring any incident to court unless he first exhausted all his administrative remedies to resolved the incident. Furthermore, Appellant by law, cannot filed a Title VII claim until he exhausted all available administrative remedies to resolved the incident.

3

This court contends that Appellant should have incorporate these " incidents" into the 1999 state law. The collective bargaining agreement and state laws require that the Appellant seek administrative remedies first to resolve the dispute. *See Collective bargaining agreement between Michigan Corrections Organization and State of Michigan and Mich Comp. Laws 423.215, 423.26.*

The June allegation has to goes it required steps of an investigation which at any time the charges could be dismissed at various stages. *See Collective bargaining agreement-Article 10, Disciplinary Action, Section A, B, C, D, E, F and G.*   The court will not allow unsupported facts into a courtroom until the investigation has been complete.  The Disciplinary action process in MDOC can take up to three months to one year to complete. Appellant has many incidents within his fifteen-year employment with MDOC resolved through the administrative process.  The exhaustion-of-remedies doctrine requires that procedures established by statute, common law, employment contract, or custom must be initiated and followed in certain cases before an aggrieved party may seek relief from the court. After all other available remedies have been exhausted, the individual can either filed a Title VII claim first and get a right to sue letter from the United States Justice Department and file a lawsuit or filed lawsuit right away. After I was termination from my position, I immediately file a grievance on September 17, 2004. This grievance starts an investigation by both, the union and MDOC Labor relations department.

Assistant Attorney General Denise Barton became a third party in my 2004 termination and begins tortuously interfering with the employment relationship of the Appellant and his related grievance investigation of his 2004 termination.  Barton confers with MDOC labor relations department while the grievance was still pending. On November 10, 2004, the grievance dispute was at Pre-Arbitration. Her action alone, influence the outcome of my grievance when MCO refused to take my grievance to Arbitration on December 20, 2004 which mean that the grievance was still pending after the November 24, 2004 state court hearing. My 2004 termination could have went to arbitration after the November 24, 2004 hearing and could have resulting on getting Appellant's termination overturned by an arbitrator.  Appellant was free to pursue his last recourse to get his job back after MCO released their

obligation on the grievance, Appellant filed a Title VII claim with the Michigan Department of Civil Rights and Equal Employment Opportunity Office on February 11, 2005 based on the illegal termination for taking my required lunch and it was common practice for employee to leave their workstation without relief to take lunch or squad training.   The "**Rule of Thumb**" is that the officer is still on assignment because the officer is still on prison grounds and can be contacted if there is a "**code-blue**" alert.  If that officer leave prison ground to go to lunch in their car, then they are consider off their assignment.  This argument was never mention in the 1999 state lawsuit.   The applicability of res judicata is the legal defense that the district court based their decision to dismiss the Appellant's lawsuit.  The doctrine serves a two-fold purpose: to insure the finality of judgments and to prevent repetitive litigation.   However, in order for the first action to be bar the second, res judicata requires that:  (1) the prior action decided on the merits,  (2) the matter contested in the second case was or could have been resolved in the first, and (3) both actions involved the same parties or their privies.  Both 1 and 3 are moot and the district court use number 2 for their decision.  We all agree that 1999 state lawsuit and the 2006 federal lawsuit are not based on the same facts and issues.  Both courts contend that the Appellant could have resolved the 2004 termination with the 1999 lawsuit.  Both courts now realize as a State classified public employee, the Mich Comp. Laws prevent the Appellant to resolve any issues in court unless all administrative remedies are exhausted.   Furthermore, this court overlooks the main document that gives Appellant the constitutional rights to resolved his 2004 termination through the established grievance procedures, the **STATE OF MICHIGAN CONSTITUTION OF 1963**(Ex **3**) *see Article XI- Public Employee-section five.*  It states in section 5, ***Position shall not be created nor abolished except for reasons of administrative efficiency. <u>Any employee considering himself aggrieved by the abolition or creation of a position shall a right of appeal to the commission through established grievance procedures.</u>***

Mich Comp. Laws 423. 215, 423.26, Collective bargaining agreement- Article 9 and State of Michigan Civil Service Commission. *See Regulation 8.01*

This court needs to review to see that Asst. Attorney General Barton interfered with Appellant's rights under the **Mich. Comp. Law 423.210 (1) (a)**(Ex ǁ)

## AFFIRMITIVE RELIEF

 For this reason, I pray that this Honorable Court of Appeals granted the motion to proceed in forma pauperis. Appellant also with firm belief, that it would be waste of the Appeals court time to proceed this matter in Appeals court because of the Michigan Constitution, the Ultimate Authority in this case, to be **remanded** back to district court.

Respectfully Submitted by,

Freddie McCoy
Pro Se
6518 Daryll Dr.
Flint, Mi 48505
(810) 785- 1738

December 15,  2008

6

**EXHIBIT 1**

## REVISED JUDICATURE ACT OF 1961 (EXCERPT)
## Act 236 of 1961

**600.2301 Amendment of process or pleadings before judgment.**

Sec. 2301.

The court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.

**History:** 1961, Act 236, Eff. Jan. 1, 1963

© 2007 Legislative Council, State of Michigan

**EXHIBIT  2**

**REVISED JUDICATURE ACT OF 1961 (EXCERPT)**
**Act 236 of 1961**

**600.2325 Amendment only on order of court.**

Sec. 2325.

No process, pleading or record, shall be amended or impaired by the clerk or other officer of any court, or by any other person, without the order of such court, or of some other court of competent jurisdiction.

**History:** 1961, Act 236, Eff. Jan. 1, 1963

© 2007 Legislative Council, State of Michigan

Rendered 12/14/2008 21:33:25          Michigan Compiled Laws Complete Through PA 304 of 2008
© 2008

EXHIBIT  3

STATE CONSTITUTION (EXCERPT)
CONSTITUTION OF MICHIGAN OF 1963

## § 5 Classified state civil service; scope; exempted positions; appointment and terms of members of state civil service commission; state personnel director; duties of commission; collective bargaining for state police troopers and sergeants; appointments, promotions, demotions, or removals; increases or reductions in compensation; creating or abolishing positions; recommending compensation for unclassified service; appropriation; reports of expenditures; annual audit; payment for personal services; violation; injunctive or mandamus proceedings.

Sec. 5. The classified state civil service shall consist of all positions in the state service except those filled by popular election, heads of principal departments, members of boards and commissions, the principal executive officer of boards and commissions heading principal departments, employees of courts of record, employees of the legislature, employees of the state institutions of higher education, all persons in the armed forces of the state, eight exempt positions in the office of the governor, and within each principal department, when requested by the department head, two other exempt positions, one of which shall be policy-making. The civil service commission may exempt three additional positions of a policy-making nature within each principal department.

The civil service commission shall be non-salaried and shall consist of four persons, not more than two of whom shall be members of the same political party, appointed by the governor for terms of eight years, no two of which shall expire in the same year.

The administration of the commission's powers shall be vested in a state personnel director who shall be a member of the classified service and who shall be responsible to and selected by the commission after open competitive examination.

The commission shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service.

State Police Troopers and Sergeants shall, through their elected representative designated by 50% of such troopers and sergeants, have the right to bargain collectively with their employer concerning conditions of their employment, compensation, hours, working conditions, retirement, pensions, and other aspects of employment except promotions which will be determined by competitive examination and performance on the basis of merit, efficiency and fitness; and they shall have the right 30 days after commencement of such bargaining to submit any unresolved disputes to binding arbitration for the resolution thereof the same as now provided by law for Public Police and Fire Departments.

No person shall be appointed to or promoted in the classified service who has not been certified by the commission as qualified for such appointment or promotion. No appointments, promotions, demotions or removals in the classified service shall be made for religious, racial or partisan considerations.

Increases in rates of compensation authorized by the commission may be effective only at the start of a fiscal year and shall require prior notice to the governor, who shall transmit such increases to the legislature as part of his budget. The legislature may, by a majority vote of the members elected to and serving in each house, waive the notice and permit increases in rates of compensation to be effective at a time other than the start of a fiscal year. Within 60 calendar days following such transmission, the legislature may, by a two-thirds vote of the members elected to and serving in each house, reject or reduce increases in rates of compensation authorized by the commission. Any reduction ordered by the legislature shall apply uniformly to all classes of employees affected by the increases and shall not adjust pay differentials already established by the civil service commission. The legislature may not reduce rates of compensation below those in effect at the time of the transmission of increases authorized by the commission.

The appointing authorities may create or abolish positions for reasons of administrative efficiency without the approval of the commission. Positions shall not be created nor abolished except for reasons of administrative efficiency. Any employee considering himself aggrieved by the abolition or creation of a position shall have a right of appeal to the commission through established grievance procedures.

The civil service commission shall recommend to the governor and to the legislature rates of compensation for all appointed positions within the executive department not a part of the classified service.

To enable the commission to exercise its powers, the legislature shall appropriate to the commission for the

ensuing fiscal year a sum not less than one percent of the aggregate payroll of the classified service for the preceding fiscal year, as certified by the commission. Within six months after the conclusion of each fiscal year the commission shall return to the state treasury all moneys unexpended for that fiscal year.

The commission shall furnish reports of expenditures, at least annually, to the governor and the legislature and shall be subject to annual audit as provided by law.

No payment for personal services shall be made or authorized until the provisions of this constitution pertaining to civil service have been complied with in every particular. Violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state.

**History:** Const. 1963, Art XI, § 5, Eff. Jan. 1, 1964;—Am. Initiated Law, approved Nov. 7, 1978, Eff. Dec. 23, 1978.

**Former constitution:** See Const. 1908, Art. VI, § 22.

**EXHIBIT 4**

# PUBLIC EMPLOYMENT RELATIONS (EXCERPT)
## Act 336 of 1947

**423.210 Prohibited conduct; service fee.**

Sec. 10. (1) It shall be unlawful for a public employer or an officer or agent of a public employer (a) to interfere with, restrain or coerce public employees in the exercise of their rights guaranteed in section 9; (b) to initiate, create, dominate, contribute to, or interfere with the formation or administration of any labor organization: Provided, That a public employer shall not be prohibited from permitting employees to confer with it during working hours without loss of time or pay; (c) to discriminate in regard to hire, terms or other conditions of employment in order to encourage or discourage membership in a labor organization: Provided further, That nothing in this act or in any law of this state shall preclude a public employer from making an agreement with an exclusive bargaining representative as defined in section 11 to require as a condition of employment that all employees in the bargaining unit pay to the exclusive bargaining representative a service fee equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative; (d) to discriminate against a public employee because he has given testimony or instituted proceedings under this act; or (e) to refuse to bargain collectively with the representatives of its public employees, subject to the provisions of section 11.

(2) It is the purpose of this amendatory act to reaffirm the continuing public policy of this state that the stability and effectiveness of labor relations in the public sector require, if such requirement is negotiated with the public employer, that all employees in the bargaining unit shall share fairly in the financial support of their exclusive bargaining representative by paying to the exclusive bargaining representative a service fee which may be equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative.

(3) It shall be unlawful for a labor organization or its agents (a) to restrain or coerce: (i) public employees in the exercise of the rights guaranteed in section 9: Provided, That this subdivision shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; or (ii) a public employer in the selection of its representatives for the purposes of collective bargaining or the adjustment of grievances; (b) to cause or attempt to cause a public employer to discriminate against a public employee in violation of subdivision (c) of subsection (1); or (c) to refuse to bargain collectively with a public employer, provided it is the representative of the public employer's employees subject to section 11.

**History:** Add. 1965, Act 379, Imd. Eff. July 23, 1965;—Am. 1973, Act 25, Imd. Eff. June 14, 1973.

**Constitutionality:** In Lehnert v Ferris Faculty Association, 500 US 507; 111 S Ct 1950; 114 L Ed 2d 572 (1991), the United States Supreme Court held that a collective-bargaining unit constitutionally may compel its employees to subsidize only certain union activities. "[I]n determining which activities a union constitutionally may charge to dissenting employees ... chargeable activities must (1) be 'germane' to collective-bargaining activity; (2) be justified by the government's vital policy interest in labor peace and avoiding 'free riders'; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop."

Ruling on the respondent union's disputed activities, the Court held:

(1) The respondent may not charge the funds of objecting employees for a program designed to secure funds for Michigan public education or for that portion of a union publication that reports on those activities. The Court found none of the activities "to be oriented toward the ratification or implementation of petitioner's collective-bargaining agreement."

(2) The respondent may bill dissenting employees for their share of general collective-bargaining costs of the state or national parent union. The district court had found these costs to be germane to collective bargaining and similar support services; the court agreed with the finding.

(3) The respondent may not charge for the expenses of litigation that does not concern the dissenting employees' bargaining unit or, by extension, union literature reporting on such activities. The Court found extra-unit litigation to be proscribed by the First Amendment of the United States Constitution because it is "more akin to lobbying in both kind and effect" and not germane to a union's activities as an exclusive bargaining agent.

(4) The respondent may not bill for certain public relations activities. The Court states: "[T]he ... activities ... entailed speech of a political nature in a public forum. More important, public speech in support of the teaching profession generally is not sufficiently related to the union's collective-bargaining functions to justify compelling dissenting employees to support it. Expression of this kind extends beyond the negotiation and grievance-resolution contexts and imposes a substantially greater burden upon First Amendment rights ... ."

(5) The respondent may charge for those portions of a union publication that concern teaching and education generally, professional development, unemployment, job opportunities, union award programs, and miscellaneous matters. The Court noted that such informational support services are neither political nor public in nature and that expenditures for them benefit all, without additional infringements upon the First Amendment.

(6) The respondent may bill for fees to send delegates to state and national affiliated conventions. The Court found that participation by local members in the formal activities of the parent is an important benefit of affiliation and an essential part of a union's discharge of its duties as a bargaining agent.

(7) The respondent may charge expenses incidental to preparation for a strike which, had it occurred, would have been illegal under Michigan law. The Court, noting that the Michigan Legislature had imposed no restriction, stated there was no First Amendment limitation on such charges. The Court added that such expenses are "substantially indistinguishable from those appurtenant to collective-bargaining negotiations ... enure to the direct benefit of members of the dissenters' unit ... and impose no additional burden upon First Amendment rights."

# PROOF OF SERVICE

I Freddie McCoy certify that on the 15th day of December of 2008 that I mailed four copy of Appellant's motion to the 6th Circuit Appeals Court and one to Defendant's Attorney-Cynthia A. Arcaro via first class mail at United States Post office in Ypsilanti, Michigan.

Respectfully Submitted by,

Freddie McCoy
Pro Se
6518 Daryll Dr.
Flint, Mi 48505
(810) 785-1738

Dated: December 15, 2008

8.   The lawsuit stems from the Title VIIdiscrimination complaint filed with the Michigan Department of Civil Rights and the Federal EEOC and the illegal discharge from my employment in 1997.

9.   Mr. Light filed a lawsuit on my behalf against the Michigan Department of Corrections (MDOC) in May of 1999 in Ingham County, Michigan Circuit Court.

10.   After Mr. Light filed a new motion for my lawsuit in November, 2000. I received a phone call from his secretary in April, 2001 to pick up my case file because Mr. Light's whereabouts were unknown for two months and they were being evicted from their place of business.

11.   Attorney Light was still my attorney of record until March 13, 2002.

12.   Attorney Light was disbarred on January 7, 2003 based on my written complaint along 26 other written complaint of wrongdoings by Attorney Light.

13.   I hired Attorney Robert Van Cleef on September, 28, 2001 to take over the lawsuit but he could not filed motion until Attorney Light's suspension became effective in March 13, 2002.

14.   Attorney Van Cleef filed an amended complaint on my lawsuit in June, 2002.

15.   In May of 2003, I was ask to appear in Court and was told by Judge James P. Giddings that Attorney Van Cleef has been disbarred on March 1, 2003. I told Judge Giddings that want to search for a new attorney or law firm to represented me in this matter and I have no plan to litigate this case and I will be only make court appearance as required by the court.

16.   Attorney Van Cleef refused to give my case file stated that he is still my attorney of record and I need a court order from Judge for him to hand over my case file.  I made several attempt to retrieve my case file from Mr. Cleef to no avail in 2003 and 2004.

17.   I informed Judge Giddings in Court on two occasions (in 2003 and 2004) that Mr. Van Cleef refused to give

me my case file and I can't hired Attorney or law firm because they are requesting the case file and I told to

come back to them until I get my case file from Mr. Van Cleef.

18.   Judge Giddings ignored my request and never made a decision about my case file.

19.   In February 23, 2004, Judge Giddings issued an Scheduling Conference Order stipulating all amendments

to April 15, 2004 and while in this hearing, I request Judge Giddings for more time to find attorney or law firm

because the difficulty of getting my case file because I could no longer proceed in this case without proper

legal representation because I completely overwhelm and I have no experience as being a lawyer.

20.   Mr. Van Cleef called me early in 2004 that he was appealing the revocation and he is still my attorney.

21.   Assistant Attorney General Denise C. Barton made references to me that I need to participate in all court

functions or the case will be dismissed.

22.   In May, 2004, my employer made false accusation of work violations against me.  I denied the allegation

and my employer conducted an investigation as according to Collective Bargaining Agreement, Article ten,

section A and the Employee Discipline Policy-02.03.100(see case 06-10837, docket 45).

23.   In June, 2004, my employer made false accusation of work violations against me. I denied the allegation

and my employer conducted an investigation in same manner on number 22 of this affidavit.

24.   An informal hearing was conducted on both allegations on August 4, 2004 by Eddie Cargor and Warden

Kenneth Romanowski. Mr. Cargor co-chaired the conference or hearing and made the both decision which

Warden delegated his authority to Mr.Cargor who was the Human Resource Manager at the Facility.

25.   The Informal disciplinary hearing is required by the Collective Bargaining Agreement and Michigan

Complied Law (MCL) 423.501 and the hearing is for employee to dispute the charges and submitted evidences.

Everything was done proper in the hearing except for Mr. Cargor's appearance at the hearing.

26. I filed administrative complaint to the Department of Corrections Disciplinary Coordinator Kathy Warner about Mr.Cargor's appearance and his decision-making during the hearing and after the hearing.

27. I flied administrative complaint of discriminatory harassment on September 6, 2004 against Warden Romanowski with the Michigan Department of Corrections.

28. I was terminated by the Michigan Department of Corrections on September 15, 2004 for work rule violations occurred in June, 2004 and the other charges of work rule violation that occurred in May, 2004 were dismissed by Kathy Warner.

29. Warden Romanowski made no recommendation to have me discharge which is a main requirement from the Employee Discipline Policy.

30. I filed administrative grievance with MCO for my illegal termination on September 17, 2004. (Exhibit D)

31. I filed for unemployment on September 17, 2004 and the Michigan Unemployment Agency conducted an investigation of my discharge.

32. MCO and the State of Michigan's grievance policy was established by the Michigan Constitution of 1963 and it is etched in stone that I am bound by the Michigan Constitution to first filed a grievance to resolved my issues without the interference of the courts.

33. Attorney General Barton violated the Michigan Constitution when she try to bring my 2004 termination into Court in October, 2004 while the grievance was still pending and being investigated by the union.

34. I never litigated my 2004 termination at the November24, 2004 hearing in the state court (see docket 45).

35. Assistant Attorney General Cynthia A. Arcaro never litigated the 2004 termination in the state court.

36. There was no incident in July of 2004 that led to my September 15, 2004 termination.

37. There was no incident in August of 2004 that led to my September 15, 2004 termination.

38.  Perjury was committed on two occasions by Warden Andrew J. Jackson during my 1999 and 2006 lawsuit.

39.  Perjury was committed on two occasions by Joanne Bridgford in court during my 1999 and 2006 lawsuit.

40.  Perjury was committed on two occasions by Kathy L. Warner in court during my 1999 and 2006 lawsuit.

41.  Perjury was committed on two occasions by Marsha Foresman in court during my 1999 and 2006 lawsuit.

42.  My grievance (GR 02-15-0075-04) was release and closed by MCO on December 20, 2004. (Exhibit E)

43.   The Michigan Unemployment Agency finished their investigation and concluded that there was no evidence of work violations committed by me and granted me unemployment. (Exhibit F)

44.  After I exhausted all my administrative remedies to resolved the termination, I filed Title VII discrimination based on racial and retaliation with the Michigan Department of Civil Rights and Federal EEOC Office on February 11, 2005 and I signed a formal complaint by February 21, 2005 to conduct an investigation on my claims of racial discrimination and retaliation for Michigan Department of Civil Rights. (See case 06-10837)

45.  I request for a Right to Sue notification which was issued on November 30, 2005 by United States Department of Justice- Civil Rights Division and I have ninety (90) days to file a lawsuit in Federal Court.

46.  Attorney Christopher J. Trainor filed a Federal lawsuit in Detroit, Michigan on my behalf on February 24, 2006 based on my first and only Title VII Discrimination of my 2004 termination.

47.  I did not exercise reasonable diligence in the my 1999 lawsuit and had two attorney that did 99% percent of the litigation and their did not exercise reasonable diligence in my 1999 lawsuit which they were latter disbarred on misconduct

What is said in Affidavit, is true to best of my knowledge and I can testify to the facts set forth in this Affidavit.

Respectfully Submitted by,

Freddie McCoy
Pro Se
6518 Daryll Dr.
Flint, Mi 48505
(810) 785-1738

Dec 15, 2008

DONNA T. KENNEDY
Notary Public, Livingston County, Michigan
Acting in Washtenaw County, Michigan
My Commission Expires Sept. 22, 2012

Dated: December 15, 2008

EXHIBIT A

# PUBLIC EMPLOYMENT RELATIONS (EXCERPT)
## Act 336 of 1947

**423.201 Definitions; rights of public employees.**

Sec. 1.

(1) As used in this act:

(a) "Bargaining representative" means a labor organization recognized by an employer or certified by the commission as the sole and exclusive bargaining representative of certain employees of the employer.

(b) "Commission" means the employment relations commission created in section 3 of 1939 PA 176, MCL 423.3.

(c) "Intermediate school district" means that term as defined in section 4 of the revised school code, 1976 PA 451, MCL 380.4.

(d) "Lockout" means the temporary withholding of work from a group of employees by means of shutting down the operation of the employer in order to bring pressure upon the affected employees or the bargaining representative, or both, to accept the employer's terms of settlement of a labor dispute.

(e) "Public employee" means a person holding a position by appointment or employment in the government of this state, in the government of 1 or more of the political subdivisions of this state, in the public school service, in a public or special district, in the service of an authority, commission, or board, or in any other branch of the public service, subject to the following exceptions:

(i) Beginning March 31, 1997, a person employed by a private organization or entity that provides services under a time-limited contract with the state or a political subdivision of the state is not an employee of the state or that political subdivision, and is not a public employee.

(ii) If, within 30 days after the effective date of the amendatory act that added this subparagraph, a public school employer that is the chief executive officer serving in a school district of the first class under part 5A of the revised school code, 1976 PA 451, MCL 380.371 to 380.376, issues an order determining that it is in the best interests of the school district, then a public school administrator employed by a school district that is a school district of the first class under the revised school code, 1976 PA 451, MCL 380.1 to 380.1852, is not a public employee for purposes of this act. The exception under this subparagraph applies to public school administrators employed by that school district after the date of the order described in this subparagraph whether or not the chief executive officer remains in place in the school district. This exception does not prohibit the chief executive officer or board of a school district of the first class or its designee from having informal meetings with public school administrators to discuss wages and working conditions.

(f) "Public school academy" means a public school academy or strict discipline academy organized under the revised school code, 1976 PA 451, MCL 380.1 to 380.1852.

(g) "Public school administrator" means a superintendent, assistant superintendent, chief business official, principal, or assistant principal employed by a school district, intermediate school district, or public school academy.

(h) "Public school employer" means a public employer that is the board of a school district, intermediate school district, or public school academy; is the chief executive officer of a school district in which a school reform board is in place under part 5A of the revised school code, 1976 PA 451, MCL 380.371

to 380.376; or is the governing board of a joint endeavor or consortium consisting of any combination of school districts, intermediate school districts, or public school academies.

(i) "School district" means that term as defined in section 6 of the revised school code, 1976 PA 451, MCL 380.6, or a local act school district as defined in section 5 of the revised school code, 1976 PA 451, MCL 380.5.

(j) "Strike" means the concerted failure to report for duty, the willful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful, and proper performance of the duties of employment for the purpose of inducing, influencing, or coercing a change in employment conditions, compensation, or the rights, privileges, or obligations of employment. For employees of a public school employer, strike also includes an action described in this subdivision that is taken for the purpose of protesting or responding to an act alleged or determined to be an unfair labor practice committed by the public school employer.

(2) This act does not limit, impair, or affect the right of a public employee to the expression or communication of a view, grievance, complaint, or opinion on any matter related to the conditions or compensation of public employment or their betterment as long as the expression or communication does not interfere with the full, faithful, and proper performance of the duties of employment.

**History:** 1947, Act 336, Eff. Oct. 11, 1947 ;-- CL 1948, 423.201 ;-- Am. 1965, Act 379, Imd. Eff. July 23, 1965 ;-- Am. 1973, Act 25, Imd. Eff. June 14, 1973 ;-- Am. 1976, Act 18, Imd. Eff. Feb. 20, 1976 ;-- Am. 1994, Act 112, Eff. Mar. 30, 1995 ;-- Am. 1996, Act 543, Eff. Mar. 31, 1997 ;-- Am. 1999, Act 204, Eff. Mar. 10, 2000
**Constitutionality:** The Michigan supreme court held in In The Matter Of The Petition For A Representation Election Among Supreme Court Staff Employees, 406 Mich 647; 281 NW2d 299 (1979), that Const 1963, art III, § 2, considered with Const 1963, art IV, § 48, precludes the Michigan employment relations commission from taking jurisdiction over the Michigan supreme court.
**Popular Name:** Public Employment Relations

© 2007 Legislative Council, State of Michigan

# EXHIBIT  B

**PUBLIC EMPLOYMENT RELATIONS (EXCERPT)**
**Act 336 of 1947**

**423.215 Collective bargaining; duties of employer and employees' representative; subjects; prohibitions.**

Sec. 15. (1) A public employer shall bargain collectively with the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives. Except as otherwise provided in this section, for the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising under the agreement, and the execution of a written contract, ordinance, or resolution incorporating any agreement reached if requested by either party, but this obligation does not compel either party to agree to a proposal or require the making of a concession.

(2) A public school employer has the responsibility, authority, and right to manage and direct on behalf of the public the operations and activities of the public schools under its control.

(3) Collective bargaining between a public school employer and a bargaining representative of its employees shall not include any of the following subjects:

(a) Who is or will be the policyholder of an employee group insurance benefit. This subdivision does not affect the duty to bargain with respect to types and levels of benefits and coverages for employee group insurance. A change or proposed change in a type or to a level of benefit, policy specification, or coverage for employee group insurance shall be bargained by the public school employer and the bargaining representative before the change may take effect.

(b) Establishment of the starting day for the school year and of the amount of pupil contact time required to receive full state school aid under section 1284 of the school code of 1976, Act No. 451 of the Public Acts of 1976, being section 380.1284 of the Michigan Compiled Laws, and under section 101 of the state school aid act of 1979, Act No. 94 of the Public Acts of 1979, being section 388.1701 of the Michigan Compiled Laws.

(c) Composition of site-based decision-making bodies established pursuant to section 1202a of Act No. 451 of the Public Acts of 1976, being section 380.1202a of the Michigan Compiled Laws, or of school improvement committees established under section 1277 of Act No. 451 of the Public Acts of 1976, being section 380.1277 of the Michigan Compiled Laws.

(d) The decision of whether or not to provide or allow interdistrict or intradistrict open enrollment opportunity in a school district or of which grade levels or schools in which to allow such an open enrollment opportunity.

(e) The decision of whether or not to act as an authorizing body to grant a contract to organize and operate 1 or more public school academies under part 6a of Act No. 451 of the Public Acts of 1976, being sections 380.501 to 380.507 of the Michigan Compiled Laws, or the granting of a leave of absence to an employee of a school district to participate in a public school academy.

(f) The decision of whether or not to contract with a third party for 1 or more noninstructional support services; or the procedures for obtaining the contract; or the identity of the third party; or the impact of the contract on individual employees or the bargaining unit.

(g) The use of volunteers in providing services at its schools.

(h) Decisions concerning use of experimental or pilot programs and staffing of experimental or pilot programs and decisions concerning use of technology to deliver educational programs and services and staffing to provide the technology, or the impact of these decisions on individual employees or the bargaining unit.

(i) Any compensation or additional work assignment intended to reimburse an employee for or allow an employee to recover any monetary penalty imposed under this act.

(4) The matters described in subsection (3) are prohibited subjects of bargaining between a public school employer and a bargaining representative of its employees, and, for the purposes of this act, are within the sole authority of the public school employer to decide.

History: Add. 1965, Act 379, Imd. Eff. July 23, 1965;—Am. 1994, Act 112, Eff. Mar. 30, 1995.

Popular name: Public Employment Relations

**EMPLOYMENT RELATIONS COMMISSION (EXCERPT)**
**Act 176 of 1939**

**423.26 Collective bargaining representatives; duties; grievances by individual employee; adjustment.**

Sec. 26. Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment, and shall be so recognized by the employer: Provided, That any individual employee at any time may present grievances to his employer and have the grievances adjusted, without intervention of the bargaining representative, if the adjustment is not inconsistent with the terms of a collective bargaining contract or agreement then in effect, if the bargaining representative has been given opportunity to be present at such adjustment.

**History:** Add. 1965, Act 282, Imd. Eff. July 22, 1965.

EXHIBIT C

STATE OF MICHIGAN
RETAINER FEE-CONTINGENT FEE AGREEMENT
WITH ATTORNEY Mark T. Light (P-41787)

NOW COMES Freddie McCoy, party of the first part, and Attorney Mark T. Light, party of the second part, and together enter into the following retainer-contingent fee agreement for legal representation.

WHEREAS, Freddie McCoy, party of the first part, wishes to retain said party of the second part, as an Attorney in a claim for damages against the Defendant(s). Freddie McCoy, party of the first part, agrees to compensate Mark T. Light, said party of the second part, as follows:

## FEES

In the event that a structured settlement, settlement, or judgment is reached with the Defendant(s), Freddie McCoy assigns to Attorney Mark T. Light, party of the second part, a fee equal to thirty percent (30%) of the present cash value of any said settlements or judgment recovery, which shall be paid in full at the time of said settlement or judgement.

Further, the parties acknowledge that Mark T. Light shall have a valid Attorney Lien on any and all monies recovered or received by Freddie McCoy herein to the extent of the percentage agreement stated above.

Finally, the parties acknowledge and agree that Freddie McCoy agrees to pay Mark T. Light a non-refundable retainer fee of $3000.00, and that any appellate work in the matter will require further consideration.

## COSTS AND EXPENSES POLICY

That said parties understand and agree that all expenses incurred relative to Freddie McCoy's claim for damages against the above stated Defendant(s) are the responsibility of Freddie McCoy regardless of the outcome of Freddie McCoy's claim. Further, that said parties understand and agree that said costs and/or expenses incurred in Freddie McCoy's claim for damages will be paid on or before the time they are incurred.

That said parties understand and agree that any costs or expenses by Mark T. Light shall be paid in full at the time of the final resolution/settlement of Freddie McCoy's claim.

That said parties understand and agree that said costs and expenses discussed above shall include but not be limited to the following items: mileage, copy costs, costs of copying file if attaorney is released, postage, transcript and deposition fees, expert fees, court fees, fees for records/reports, travel expenses, witness fees, telephone bills, and any other reasonable costs or expenses relative to Freddie McCoy's claim.

## OTHER LEGAL SERVICES

That said parties understand and agree that this contingent fee agreement does not include any other legal services such as probate court proceedings or defending, compromising, or settling any debts, claims or cross-claims against the undersigned, nor does it include claims by or against

Blue Cross\Blue Shield, Automobile No-Fault, Workers' Compensation, Social Security, or any other insurance carriers relative to this transaction. Further this agreement does not include the recovery of Social Security, or any other governmental benefits. Fees for such additional services shall be on a hourly basis or set by statute and are subject to a separate written agreement with Attorney Mark T. Light. That Attorney Mark T. Light's hourly fees in these matters are $100.00 per hour.

## LEGAL REPRESENTATION

That said parties understand and agree that Mark T. Light shall have the authority to negotiate a settlement or compromise of Freddie McCoy's claim against said Defendant(s), either before or after this action for damages is commenced.

That said parties understand and agree that no other representations have been made relative to legal representation between the parties and this is the parties entire binding integrated agreement for legal representation. Further, the parties agree not to modify this agreement except by way of a written instrument.

Further, the parties acknowledge that Freddie McCoy, party of the first part, does hereby bind all heirs, executors, and legal representatives to the terms and conditions set forth in this Fee Agreement with Attorney Mark T. Light, party of the second part.

That said parties understand and agrees that Mark T. Light, party of the second part, hereby agrees to represent said Client, party of the first part, diligently, conscientiously, and to the best of his abilities in Freddie McCoy's claim for damages against the Defendant(s).

That the parties acknowledge and agree that they have read and understand the above Retainer-Contingent Fee Agreement, thus they set their hands and seal this agreement on this the 28 day of April, 1999.

Date: 4-28-99

_____
Freddie McCoy, Client,
Party of the First Part

_____
Attorney Mark T. Light,
Party of the Second Part

# RETAINER/CONTINGENCY AGREEMENT

I, <u>Fred McCoy</u>, hereby retain the Law Firm of ROBERT Van CLEEF, P.C., (attorney), to render legal services on behalf of <u>myself</u> against <u>MDC</u> or any other person, firm or corporation who may be deemed liable and collectible in damages as a result of an incident which occurred on or about _____

I agree to pay a retainer fee of <u>$1000</u> $ _____. <u>This retainer is non-refundable.</u> However, if after a preliminary investigation it is determined that this law firm will not continue representation due to the unlikelihood of recovery or other obstacles to representation, the retainer fee will be refunded, minus an amount representing the time spent for the preliminary investigation, which will be $250.00.

I further agree to pay any and all reasonable and necessary expenses, court costs and necessary probate fees, which my attorney may pay or incur on my behalf in connection with my claim, which sum shall first be deducted from the gross recovery in determining the net recovery and the attorney fee.

I further agree to pay ROBERT Van CLEEF, P.C., an attorney fee of one third (33-1/3%) of the gross recovery. <u>NO LEGAL FEE OR EXPENSES, EXCEPT AS SET FORTH BELOW, WILL BE CHARGED IF THERE IS NO MONEY OR PROPERTY RECOVERY.</u> Court awarded attorney fees shall not affect the validity of the percentage recovery as specified herein.

I further agree that my attorney shall have the authority to enter into settlement negotiations regarding my claim and that attorney shall have an attorney's lien on any and all money recovered or received by me herein, to the extent of the percentage stated above based on legal services performed.

I further agree that I will be truthful to my attorney and that said Law Firm shall have the right to withdraw as my attorneys and revoke this agreement if I have misrepresented facts to my attorney affecting my claim, if the case is not deemed meritorious or if the time, costs and expenses of litigation would be too great based on the likelihood or amount of recovery. I understand that the Law Firm may request an advance payment of expenses if the amount offered in settlement is believed by Robert Van Cleef, P.C. to be higher than what can reasonably be expected to be received from trial of this matter.

This agreement does not constitute commitment to appeal an unfavorable result in the trial court. If, in the situation where a judgment is received and the Defendant appeals, this Law Firm will represent the client in the appeal for an additional ten (10%) percent of the net judgment. If the appeal involves a matter for which there is no judgment a separate fee agreement will be signed between client and attorney.

This agreement does not cover probate fees which may be charged against the client, at the

Robert Van Cleef, P.C.
Attorney at Law

19100 West Ten Mile Road
Suite 201
Southfield, Michigan 48075-2129
Telephone (248) 355-0880
Fax (248) 355-0882

discretion of the Law Firm.

At the closing of my file regarding the above matter the Law Firm will retain the representation file for a period of sixty (60) days. After that time period has elapsed the representation file may be destroyed.

Property that is considered mine will be retained by the Law Firm for a five (5) year period, unless I remove that property after the file is closed. My property consists of such things as documents and items that were in my possession prior to consulting the Law Firm, are unique for which I do not have originals or were created or obtained by me initially without regard to litigation.

No promises or assurances other than what is contained in this agreement have been made.

X _____
Client

Witnessed by:

_____          Date: _9-28-01_

* Client has paid $9__ -

Revised 8/99

P.C.

lile Road

an 48075-2429
55-9880
7

EXHIBIT  D

RECEIVED

MICHIGAN DEPARTMENT OF CORRECTIONS      SEP 2 0 2004      4835-0136 3/90
**SECURITY UNIT GRIEVANCE (C-12)**                        CAJ-136

G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-04

**LOCAL 526M**                          Grievance # (assigned by personnel)

| EMPLOYEE'S NAME: | Freddie McCoy |
|---|---|

EMPLOYEE'S ADDRESS: 6518 Daryll DR Flint, Mich 48505

| CLASSIFICATION: B-9 | SOCIAL SECURITY NUMBER: 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 |
|---|---|

CONTRACT ARTICLE(S) AND SECTION (S): Article 10, All Section Applied  Article 24

RULE/POLICY/PROCEDURE: 1 #1 Inthumane Treatment, #3 Discrimination #4 USE/misuse of State Property or Equipment

| AGENCY/COMPLEX: HVM | SHIFT: 10-6 | DATE: 9-17-04 |
|---|---|---|

| IMMEDIATE SUPERVISOR: CAPT Jungling | PROBATIONARY EMPLOYEE: YES ☐ NO ☑ |
|---|---|

EMPLOYEE'S STATEMENT OF GRIEVANCE: (Attach additional pages if needed)

ON Sept 14, 2004, I was Discharged without just cause by my
Employer. The Discharge was based on Discrimination and one
person word without collaboration evidences. This grievance is
based on two part Discrimination and no sufficient evidence
See Attached Statements

A JUST AND FAIR SOLUTION TO MY GRIEVANCE IS:

To Dismissed All charges and
make whole

Am 9/21

SEP 22 2004

MDOC LABOR RELATIONS

| A STEP 1 CONFERENCE IS: ☐ Requested ☐ Not Requested | A DIRECT APPEAL TO: (see Article 9, Sec. A) ☐ Step 2 ☑ Step 3 | Date Given to Step 1 Supervisor: |
|---|---|---|

| GRIEVANT'S SIGNATURE: F McCoy | Date Step 1 Answer Given to Steward: |
|---|---|

| UNION REPRESENTATIVE'S SIGNATURE: T Motley | STEP 1 ANSWER IS: ☐ NOT ACCEPTED |
|---|---|

| DATE GIVEN TO STEP 2 SUPERVISOR: | STEP 2 CONFERENCE IS: ☐ REQUESTED ☐ NOT REQUESTED |
|---|---|

| DATE STEP 2 ANSWER GIVEN TO STEWARD: | STEP 2 ANSWER IS: ☐ ACCEPTED ☐ NOT ACCEPTED |
|---|---|

(The Step 2 answer should be written on a separate, attached page)

| UNION REPRESENTATIVE'S SIGNATURE: T Motley | DATE APPEALED & FORWARDED TO STEP 3: 9-17-04 |
|---|---|

9/21/04  RP/li

# GRIEVANCE STATEMENT OF FACTS
## GR-02-15-0075-04

Part 1

I disputed the disciplinary conference findings from the disciplinary conference of August 3, 2004. The findings from Eddie Cargor is not accurate and misleading. There was several key evidences and information left off from this summary. There was no collaborating evidence to support Lt. Higgins's allegation about not giving me authorization to relieved myself for lunch. This was a isolated incident involving a telephone conversation between me and Lt. Higgins, about me not getting lunch relief and her approval to relieved myself. There was no one around when I made this call. You have one person's word against another which become hearsay and no evidence to confirmed either side of the story. Mr. Cargor left out the discussion of 10-6 shift officers relieved themselves for lunch majority of the time when we have full staff available. This was confirmed by A/Lt. Conway, M.C.O Rep. C. Wright and myself. The investigation by A/Lt. Conway violated my due process and it violated several labor agreement that is prescribed in the contract. The first one is that every known witness was not given a questionnaire such as C/S Zajdel, who was the yard officer that suppose to provide lunch relief and the bid officers in housing unit two along with other officers that had work in housing unit two including myself. #2. I submitted a relevant document to the investigator before the completion of the investigation to support my claim that I didn't received lunch relief. It was a log book entry to show that C/S Zajdel never came in housing unit four that night. It was never included in the disciplinary packet and it was submitted (attached) in the disciplinary conference to Warden Romanowski and he would not accepted or look at this evidence. #3. The investigation was not thorough and bias because A/Lt. Conway didn't report the facts of the case but made recommendation and predetermined my guilt. #4. The impartiality was completely destroy because A/Lt. Conway and Lt. Higgins are on the same shift(10-6) same as me and it evident that Lt. Higgins had strong influence in this investigation and A/Lt. Conway. #5. The rule is inconsistently applied. It was raised by M.C.O Rep C. Wright that when the last time he work the 10-6 shift, the officers was relieving themselves for lunch and that went on for three years straight. Inconsistent enforcement communicates a message that compliance is not that important, or equitable treatment is not the practice. #6. This rule was not clearly communicated by management. #7. There was no adequate proof and evidence by A/Lt. Conway's investigation. The missing point in this investigation is that the investigator contends that

Housing units 2 are not far apart from one another

Lt. Higgins didn't give me prior authorization to relieved myself for lunch and I said that I was given authorization by Lt. Higgins to relieved myself for lunch. The investigator didn't provide or show any evidence to support Lt. Higgins's Allegation. The burden of proof is on management not the employee. It look more and more like entrapment because Lt. Higgins knew that I was going to lunch and knew where I would be! The conference holder said that Lt. Higgins's word is more credible that mine and that is only because she is a supervisor. Not only Warden Romanowski is showing prejudice but is acting in a discriminatory or arbitrary manner and fail to observe the required due process procedures. In closing, there was a recent disciplinary conference findings(DS-02-0006-04) by the same chair person( Romanowski) of similar circumstances of isolation. Where a officer said another officer struck him and there was no witnesses to the incident. It was stated by this chair person that the officer was no more credible than the other officer and the charges was dismissed, so what is the different between these officers and Lt. Higgins. She is a supervisor and they are not. It is evident that this chair person can't be fair and objective. I would like to noted that the chairperson(Warden Romanowski) didn't make a recommendation of dismissal and the BHR didn't review the charges because there is no evidences to show the burden of proof by the employer thus robbing me of due process. Department of Corrections can't be fair and objective when an Black employee is involved any type of disciplinary actions. I was fired on a whim based on no evidence and my race.

Thank you,

Freddie McCoy

9-17-04

EXHIBIT E



# Michigan Corrections Organization

## Service Employees International Union Local 526M, AFL-CIO



421 W. Kalamazoo Street  Lansing, MI 48933
Phone (517) 485-3310    Fax (517) 485-3319
www.mco-seiu.org

December 20, 2004

Freddie McCoy
6518 Daryll Dr
Flint, MI 48503

Re:  Grievance No. 15-075-04

Dear Freddie:

At a recent MCO Executive Board meeting your appeal and related grievance information concerning your discharge was reviewed for further consideration.

Since the appeal did not contain any additional information or facts to give the grievance merit for arbitration, the Board has voted to uphold the Committee's decision not to arbitrate the grievance and it will be closed.

On behalf of the Executive Board
Sincerely and Fraternally,

Ron Parkinson
Labor Relations Representative

RP:li
opeiu459afl-cio

cc: Theopolis Motley

*Proudly representing correctional and forensic officers*

EXHIBIT  F

Rev. 05/02                    DEPARTMENT OF CONSUMER & INDUSTRY SERVICES
                                        State of Michigan
## BUREAU OF WORKERS' & UNEMPLOYMENT COMPENSATION
BO 063    PO BOX 5050                   SAGINAW            MI  48605050

### NOTICE OF DETERMINATION

IlilllilullllullllllilllllllilllullllilulllllllllilllilulllII
MCCOY              FREDDIE                    INVOLVED EMPLOYER:  0800166 000
6518 DARYLL DRIVE                            HURON VALLEY MENS FACILITY
FLINT MI  48505-1962                         3201 BEMIS RD
                                             YPSILANTI MI  48197-9307


        FOR CLAIM OF:  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
        FILED:  09/17/2004    BYB:  09/12/2004      SEQ:  000

    YOU WERE FIRED FROM HURON VALLEY-MICHIGAN DEPARTMENT OF CORRECTIONS ON
    9/15/04 FOR VIOLATION OF MDOC WORK RULES.  YOU WERE OBSERVED IN THE FOOD
    AREA AND AWAY FROM YOUR ASSIGNED UNIT WITHOUT PROPER AUTHORIZATION.  YOU
    STATED THAT YOU WERE GIVEN AUTHORIZATION BY LT. HIGGINS.  THE BURDEN OF
    PROOF LIES WITH THE EMPLOYER.  THE EMPLOYER HAS NOT SUBSTANIATED MISCONDUCT
    IN CONNECTION WITH THE WORK.

    IT IS FOUND THAT YOU WERE NOT FIRED FOR A DELIBERATE DISREGARD OF YOUR EMPLOYERS
    INTEREST. YOU ARE NOT DISQUALIFIED FOR BENEFITS UNDER MES ACT, SEC. 29(1)(B).


IF YOU DISAGREE WITH THIS (RE)DETERMINATION, REFER TO "PROTEST/APPEAL RIGHTS" ON THE REVERSE SIDE OF THIS FORM.
        CLAIMS EXAMINER:       ADJUD TASK FORCE A            T
        **DATE NOTICE WAS MAILED OR PERSONALLY SERVED:**            10/06/2004
    1302        063        10/05/2004        10/05/2004      000599

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form.

ENTER CHARGE NUMBER
☑ FEPA  155328
☒ EEOC

## MICHIGAN DEPARTMENT OF CIVIL RIGHTS

(State or local Agency, if any)                      and EEOC

| NAME (indicate Mr., Ms., or Mrs.) | HOME TELEPHONE NO. (include Area Code) |
|---|---|
| MR. FREDDIE MC COY | 810-785-1738 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 6518 DARYLL DR | FLINT, MI 48505 | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | # EMPLMEMBERS | TELEPHONE NUMBER (include Area Code) |
|---|---|---|
| HURON VALLEY MEN'S FACILITY | 350 | 313-572-9900 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 3201 BEMIS RD | YPSILANTI, MI 48197 |

| NAME | TELEPHONE NUMBER (include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))
☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ AGE  ☐ RETALIATION  ☐ OTHER (Specify)

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (Month, day, year)
04/07/97

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I was hired by my employer on April 30, 1989, as a correction officer.

On April 7, 1997, I was suspended for fifteen days for failure to take proper count of inmates. Management skipped steps in the progressive discipline penalty grid in order to discipline me. The next discipline will cause me to be discharged.

White and women employees who violates the same work rule are not disciplined as severely and management does not follow the progressive penalty grid when disciplining them.

I, a Black man, believe I was disciplined more severely because of my race and sex.

This complaint is based on the Elliott-Larsen Civil Rights Act #453, as amended and Title VII, U.S. Civil Rights Act of 1964, as amended.

| ☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary to meet State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| | *Freddie E McCoy* |
| Date 4-8-97  Charging Party (Signature) *Freddie E McCoy* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month and year) April 8, 1997 |

EEOC FORM 5 OCT 97          PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

ERMA SHAW
Notary Public, Genesee County, MI
My Commission Expires Apr. 1, 2001

COMMISSION
Bishop George Brown
Albert Calille, J.D.
Evelyn L. Crane, Ed.D.
Dr. Yahya Mossa-Basha
Dr. Tarun K. Sharma
Valerie P. Simmons, J.D.
Gary Torgow, J.D.
Francisco J. Villarruel, J.D.

STATE OF MICHIGAN



JOHN ENGLER, Governor

Michigan Dept. of Civil Rights
411 E. Genesee Street
Saginaw, MI 48605
Tel:  (989) 758-1686
Fax: (989) 758-1564

# DEPARTMENT OF CIVIL RIGHTS

### NANETTE LEE REYNOLDS, Ed.D.
### Director

October 8, 2001

Mr. Mike Hosey
Michigan Department of Corrections
Grandview Plaza,  P.O. Box 30003
Lansing, MI 48909

Re: MDCR Contact # 155328 Freddie E. McCoy v Michigan Department of Corrections

Dear Mr. Hosey:

Evidence gathered during the investigation of the above named complaint supports the claimant's allegation of unlawful discrimination.  The department has scheduled a conciliation conference to attempt to resolve this matter through private discussion.  I will conduct the conference on behalf of the department.

The conference is scheduled as follows:

Date:     November 8, 2001
Time:     02:00 PM
Method:  conference
Place:     Michigan Department of Civil Rights, Saginaw State Office Building, 411 E Genesee,
              Saginaw, Michigan 48607

The conference is not a hearing or a factfinding session.  The claimant will not participate in this conference.  You are requested to have a representative present who has the authority to make a decision regarding the resolution of this matter.

If you have a disability which will require an accommodation so that you can participate in the conference, or if you have any questions, please contact me at your earliest convenience.

Sincerely,

Michael R. Maher
Team Coordinator
989-758-1759

# PROOF OF SERVICE

I Freddie McCoy certify that on the 15th day of December of 2008 that I mailed four copy of Appellant's affidavit to the 6th Circuit Appeals Court and one to Defendant's Attorney-Cynthia A. Arcaro via first class mail at United States Post office in Ypsilanti, Michigan.

Respectfully Submitted by,

Freddie McCoy
Pro Se
6518 Daryll Dr.
Flint, Mi 48505
(810) 785-1738

Dated: December 15, 2008